561 So.2d 327 (1990)
Mary Lou GARDNER, Appellant,
v.
Rand EDELSTEIN, Appellee.
Rand EDELSTEIN, Appellant,
v.
Mary Lou GARDNER, Appellee.
Nos. 89-55, 89-1590.
District Court of Appeal of Florida, First District.
April 16, 1990.
On Motion for Rehearing June 1, 1990.
Michael W. Jones, Gainesville, for Mary Lou Gardner.
Allison E. Folds of Watson, Folds, Steadham, Christmann, Brashear, Tovkach & Walker, Gainesville, for Rand Edelstein.
*328 ZEHMER, Judge.
This case involves consolidated appeals of orders entered subsequent to a final judgment dissolving the marriage of the parties. Mary Lou Gardner, the former wife, appeals the lower court's denial of her petition for modification of the final judgment of dissolution of marriage. Rand Edelstein, the former husband, appeals a separate order awarding Gardner attorney's fees and court costs incurred during litigation of the petition for modification. We reverse both of the appealed orders.
In January 1984, the lower court entered a final judgment dissolving the parties' marriage and approving a written settlement agreement between the parties. With regard to alimony, the agreement provided that Rand Edelstein (Husband), would pay to Mary Lou Gardner (Wife),
periodic alimony of $3,000 per month beginning on the first day of the month following the entry of final judgment dissolving the marriage, and continuing on the first day of each consecutive month thereafter for a period of five years. Thereafter, beginning with the payment due on the fifth anniversary date of the first payment made by the Husband to the Wife hereunder, the Husband shall pay to the Wife periodic alimony in the amount of $1,000 per month for each consecutive month until her death or remarriage.
In February 1988, Gardner filed a petition for modification of the final judgment seeking an increase in the alimony payments. Testimony at the hearing on this petition revealed that the parties were married for approximately 24 years. Gardner had a high school education and worked primarily within the home, raising the parties' two children and tending to the family's domestic needs during the marriage, although she worked for two short periods during the marriage managing a racquetball club and doing bookkeeping for several physicians. Edelstein, on the other hand, became a successful stockbroker with Merrill Lynch during this period. During the latter years of the marriage, the family became interested in Arabian horses. Gardner's involvement and interest in raising horses grew, and the parties eventually developed and treated it as a business. Edelstein bought Gardner a truck, helped her purchase horses, and claimed the associated business expense deductions on their joint federal income tax returns. Following the breakup of the marriage, Gardner continued to work in the horse-breeding business. However, substantial changes were made to the federal income tax laws applicable to this business, and as a consequence the Arabian horse market soured and many breeders, including Gardner, were forced from the business. At the time of the final hearing, Gardner was earning $1,025 per month as a clerical employee at the Alachua County Courthouse; Edelstein had an estimated income of $188,000 in 1988.
In her petition for modification of final judgment, Gardner stated that the alimony schedule in the settlement agreement and final judgment was predicated on the parties' belief that she would become self supporting by raising her Arabian horses following the dissolution of marriage. She alleged that there had been a substantial change in her circumstances, which was permanent, unanticipated, and involuntary, in that her horse-raising ambitions had not materialized. She alleged that she was unable to support herself as contemplated by the parties at the time of entry of the final judgment, and that Edelstein could well afford to pay increased alimony payments. Gardner requested that the court increase the amount of alimony and pay her reasonable attorney's fees and court costs.
The lower court denied the petition on the grounds that Gardner had not met the heavy burden required of a party seeking modification, that there had not been a substantial change in circumstances that could not have been anticipated or expected, and that the agreement to pay alimony and award of alimony was for permanent periodic rather than rehabilitative alimony. By separate order, the court found Gardner to be in need of an award of attorney's fees and costs, found Edelstein to have the ability to pay those fees, and awarded Gardner attorney's fees in the amount of $6,848.99.
*329 We first address the lower court's denial of Gardner's request for modification of alimony. The order of denial states that the alimony provision of the settlement agreement was for permanent periodic, not rehabilitative, alimony. Gardner contends that rehabilitation was the clear purpose of the agreement, and that was the reason alimony was to be decreased after five years. Edelstein contends that the wording of the agreement clearly shows that it was for permanent periodic alimony.[1]
In determining the nature and purpose of this agreement, "we look to the intent of the parties `by examining the plain language of the agreement, its surrounding circumstances, and the parties' apparent purpose.'" See Wolfe v. Wolfe, 424 So.2d 32, 34 (Fla. 4th DCA 1982). Considering the agreement as a whole, we construe the alimony provision to be rehabilitative in nature. We base this construction on uncontroverted evidence of Gardner's contribution to the marriage and family in lieu of continuing her education and obtaining work experience, and undisputed testimony that the parties intended that Gardner rehabilitate herself through the horse-breeding business and contemplated that rehabilitation would be accomplished within five years. The structure of the alimony plan reflects this intention and purpose.
A petition for modification of rehabilitative alimony should be granted if the petitioner shows that he or she made diligent efforts to become rehabilitated, and despite these efforts, substantial rehabilitation has not occurred. Wolfe v. Wolfe, 424 So.2d at 35. The evidence in this case shows that Gardner diligently tried to rehabilitate herself through the horse-breeding business and that, through no fault of her own,[2] her attempts to become successful in that business failed. Although a party seeking modification of an alimony award fixed by a property settlement agreement carries an exceptionally heavy burden, Andrews v. Andrews, 409 So.2d 1135 (Fla. 2d DCA 1982), that burden was met in this case and the trial court abused its discretion in denying the petition for modification. We reverse and remand for reconsideration by the trial court. On remand the trial court should determine the duration of the extension of rehabilitative alimony, the amounts thereof, and whether, in light of the frustrated purpose of the original plan, a different plan for rehabilitation should be made.
The order awarding Gardner attorney's fees and costs is reversed because the order fails to set forth specific findings required by Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985). When an order awarding attorney's fees under section 61.16 fails to set forth specific findings regarding the appropriateness of reduction or enhancement factors, "the order will be reversed, notwithstanding the existence vel non of competent substantial evidence upon which the trial court could have based its determination." Stewart v. Stewart, 534 So.2d 807 (Fla. 1st DCA 1988); see also Gagnon v. Gagnon, 539 So.2d 1179 (Fla. 1st DCA 1989). In accordance with Bosem v. Bosem, 279 So.2d 863 (Fla. 1973), Faust v. Faust, 553 So.2d 1275 (Fla. 1st DCA 1989), and Levy v. Levy, 483 So.2d 455 (Fla. 3d DCA), rev. den., 492 So.2d 1333 (Fla. 1986), the amount of the fee need not be limited on remand by the fee agreement between Gardner and her attorney. See also Florida Patient's Compensation Fund v. Moxley, 557 So.2d 863 (Fla. 1990); Inacio v. State Farm, 550 So.2d 92 (Fla. 1st DCA 1989). We acknowledge conflict with Winterbotham v. Winterbotham, 500 So.2d 723 (Fla. 2d DCA 1987), and certify this question as a matter of great public importance, as we did in Faust v. Faust, 553 So.2d at 1278.
REVERSED and REMANDED.
MINER, J., and CAWTHON, VICTOR M., Associate Judge, concur.

*330 ON MOTION FOR REHEARING
Both parties agree that our directions to the trial court with regard to reconsideration of rehabilitative alimony need clarification. On remand, the trial court is directed to review the rehabilitative alimony plan and determine whether such plan should be extended, modified, terminated, or converted to permanent alimony. In all other respects, Edelstein's motion for rehearing is denied.
MINER, J., and CAWTHON, VICTOR M., Associate Judge, concur.
NOTES
[1] The settlement agreement refers to the intended alimony as "periodic," not permanent periodic.
[2] The evidence showed that the federal tax laws changed during this period to eliminate the write-offs available to passive investors, and many of these investors left the horse market. Nothing in this record shows that the parties contemplated such drastic changes in the tax laws in making this agreement.