632 A.2d 191

**Jack D. BLAINE**

v.

**Bryna J. BLAINE.**

**No. 1685, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

Oct. 27, 1993.

690

David Shelton Goldberg, Rockville, for appellant.

Allen J. Kruger, Laurel, for appellee.

Argued before ALPERT, HARRELL and MURPHY, JJ.

HARRELL, Judge.

On 15 November 1985, the Circuit Court for Montgomery County granted Bryna J. Blaine, appellee, a divorce from Jack D. Blaine, appellant, and awarded her alimony in the amount of $800.00 per month for sixty (60) months. Near the end of this time period, appellee filed a Motion to Extend and Increase Alimony. A domestic relations master heard the parties' evidence and issued Findings of Fact and Recommendations proposing that the initial alimony award be extended indefinitely at the same monthly amount. After considering exceptions to the master's report, the chancellor issued an Order adopting the master's recommendations. Appellant's timely Notice of Appeal followed.

*Facts*

The parties were married on 16 February 1967. Two children were born to the Blaines. At the commencement of the marriage, Ms. Blaine worked while her husband completed medical school, an internship, and a residency. After the children were born, Ms. Blaine worked in the home as a mother and homemaker while Dr. Blaine was employed as a physician. Difficulties arose in the marriage and, in April of 1983, the parties separated.

The Circuit Court for Montgomery County granted Ms. Blaine an absolute divorce on 15 November 1985 and simultaneously awarded her alimony. In its Memorandum and Order, the court (Beard, J.) noted the following in connection with its award of alimony:

> Plaintiff [Dr. Blaine] is currently employed as a psychiatrist by the National Institute on Mental Health and earns an annual salary in excess of Sixty–Two Thousand Dollars ($62,000.00). For the past few years, Defendant [Ms. Blaine] has worked as a teacher's aid[e] during the children's school hours and earns approximately Ten Thousand Dollars ($10,000.00) annually. She is also presently seeking

a masters degree, which she anticipates will be completed in two to three years[.]

\* \* \* \* \* \*

Both the Plaintiff and Defendant are in their middle years. Presently both parties have regular incomes, though the Defendant's is disproportionately less than that of the Plaintiff. The conduct of the Plaintiff is the basis upon which the marriage has terminated. The parties have been married for eighteen years. At this time each party enjoys good health, both physically and mentally. The primary source of financial support for the maintenance of the family has been provided by the Plaintiff. Based upon the entire record, the evidence and testimony produced by the parties and other witnesses at the hearings in this case with respect to the financial needs and resources of the parties, the ability of each to be wholly or partially self-supporting, the standard of living established during the marriage, the duration of the marriage, contributions, monetary and non-monetary of each party to the well-being of the family, the fact that the circumstances leading to the estrangement of the parties and of the dissolution of the marriage, the age and physical condition of the parties, the health and well-being of the minor children, and having balanced the monetary award with the alimony, child support and fees granted, it is by the Circuit Court for Montgomery County, Maryland this 15th day of November, 1985,

\* \* \* \* \* \*

ORDERED, that Jack D. Blaine pay to Bryna J. Blaine alimony in the amount of Eight Hundred Dollars ($800.00) per month for sixty (60) months beginning December 1, 1985 and on the 15th of each month thereafter, beginning January 15, 1986, and including November 15, 1990, or until the death of either party or the remarriage of Bryna J. Blaine[.]

Ms. Blaine received her Master's Degree in health promotion counseling from Trinity College in Washington D.C. in May of 1988. She intended to become a business consultant,

counseling employees on how to maintain healthy lifestyles and, correspondingly, keep employers' health costs at a minimum. Despite her diligent efforts to find a job in this field, she was unsuccessful. She blamed the recession, stating: "it seems with the economy falling down ... this is a fringe benefit, this is something that was easily wiped out for companies that had it, or certainly not added to." On 29 November 1990, Ms. Blaine filed a Motion to Extend and Increase Alimony on the grounds that the scarcity of jobs in the field of health counseling rendered her unable to rehabilitate her condition. She alleged that there was "still a vast disparity of income between the parties."

Based on the evidence received at a 19 July 1991 hearing, the master made a number of findings concerning Ms. Blaine, including the following: (1) her gross annual income totaled $31,000.00 from three jobs (in addition to her full time job with the Montgomery County Board of Education, she also worked approximately once a week teaching Hebrew school and occasionally proctored the administration of standardized scholastic aptitude tests); (2) she had exerted "reasonable efforts to obtain employment" in her field and sought employment in a related field (counseling), but received no offer that would equal or exceed the earnings from her three current jobs; (4) her current primary job held "no potential for advancement"; and (5) although she "made as much progress toward becoming self-supporting as can reasonably be expected," the parties' respective standards of living remained "unconscionably disparate."

With respect to Dr. Blaine, the master found that appellant's gross income was $136,750.00 per year before consideration of tax shelters, and that neither he nor his former wife anticipated that she would be unable to secure a job in her new field of study after she received her Master's degree. The master concluded that "[t]he lack of jobs in the health promotion counselling field was a change of circumstances and the inability of the defendant to obtain the anticipated income would lead to a harsh and inequitable result without an extension of alimony." The master therefore recommended

that Dr. Blaine "pay alimony of $800.00 per month to [Ms. Blaine]" and that the alimony be "extended for an indefinite period."[1] The circuit court (Ryan, J.) agreed and ordered the establishment of indefinite alimony as recommended by the master in an Order dated 8 June 1992.

Additional facts will be supplied, as needed, in our analysis of the issues presented by this appeal.

### Issues

Appellant presents the following three contentions for our consideration:[2]

---

1. We note that apparently the appellee may soon be entitled to receive a part of appellant's pension. This observation was made in the 1991 findings of the master:

> [Dr. Blaine] will shortly be eligible to retire and at that time [Ms. Blaine] will be entitled to 29% of his pension. It is the opinion of the Master that, at least until the time he does so, [Ms. Blaine] is in need of continuing alimony to enable her to maintain a standard of living well below that which [Dr. Blaine] can afford and substantially less than she anticipated when she undertook her Master's degree program which she was enrolled in at the time of the divorce.

The master determined that in 1985 Dr. Blaine's retirement benefits were expected to vest eight years after the date of the original divorce decree. Although he would then be entitled to immediate retirement, the master found that the commencement of the receipt of his retirement benefits was "entirely in [Dr. Blaine's] control." Thus, Ms. Blaine's receipt of her twenty-nine percent of his pension would not be triggered until Dr. Blaine actually retired.

2. In addition to these three contentions, appellant also prefatorily and half-heartedly contends that Judge Ryan's review of the master's findings of fact and recommendations may not fully comport with his responsibilities. A chancellor must evaluate the master's first-level factfinding according to a "clearly erroneous" test, and then "exercis[e] his independent judgment concerning the proper conclusion to be reached upon those facts." *Domingues v. Johnson*, 323 Md. 486, 493, 593 A.2d 1133 (1991). In *Domingues*, the Court of Appeals explained:

> The ultimate conclusions and recommendations of the master are not simply to be tested against the clearly erroneous standard, and if found to be supported by evidence of record, automatically accepted. That the conclusions and recommendations of the master are well supported by the evidence is not dispositive if the independent exercise of judgment by the chancellor on those issues would produce a different result.

*Domingues*, 323 Md. at 491–92, 593 A.2d 1133.

(1) Where, during the period that the appellee received rehabilitative alimony, she earned her master's degree and tripled her income, the trial court erred in indefinitely extending alimony pursuant to Family Law Article 11–107(a)(1), Code of Maryland;

(2) Where the trial judge determined at the time the parties were divorced that an award of indefinite alimony was not appropriate, the court at a later date, acting pursuant to Family Law Article 11–107(a)(1), Code of Maryland, may not revisit that determinon [sic] and award indefinite alimony;

(3) In determining whether or not pursuant to Family Law Article 11–107(a)(1), Code of Maryland, to extend the period for which alimony is awarded, it is not appropriate to consider the payor spouse's post divorce increases in income.

### Statutory Background

Section 11–107(a)(1) of the Md.Code (1991 Repl.Vol., 1992

---

We recently applied this standard in *Hadick v. Hadick*, 90 Md.App. 740, 603 A.2d 915 (1992), a child custody case involving the weighing of specific, detailed facts to discern the best interests of the children involved there. We remanded the case because these facts were not conclusively determined. *See Hadick*, 90 Md.App. at 751, 603 A.2d 915 ("We are unable to determine ... whether the master's recommendations and the trial court's acceptance were sufficiently based on factors other than the unsupported inferences made by the master as to the effect ... Dr. Hadick's commitment to [his handicapped daughter has on his sons].")

The instant case involves no such ambiguity. Rather, the facts composing the alleged circumstances that arose after the original divorce decree are clearly discernable: Ms. Blaine's reasonable efforts and failure to procure a new job are uncontested, as are the general financial situations of the two parties. Therefore, the appellant's exceptions did not challenge the master's first-level findings of fact. In fact, the exceptions filed by appellant questioned only the conclusions reached from the facts. Thus, the Chancellor was not confronted with allegations that required him to determine if the master had engaged in erroneous fact-finding.

The question thus becomes whether Judge Ryan exercised "his independent judgment concerning the proper conclusion to be reached upon those facts." That issue we shall endeavor to answer in our review and analysis of appellant's issues on appeal.

Suppl.), Family Law Article[3] states: "[T]he court may extend the period for which alimony is awarded if ... circumstances arise during the period that would lead to a harsh and inequitable result without an extension[.]" Thus, we must decide whether the lower court was correct in finding that (1) a change in circumstance arose between the date of the original alimony award and when it considered the Motion to Extend and Increase Alimony, and (2) a failure to award the extension would have led to a harsh and inequitable result.

If these criteria are met, and modification of the award is therefore appropriate, a court must nonetheless refrain from granting an alimony award for an indefinite time period unless appellee meets the requirements of § 11–106(c), which states:

(c) *Award for indefinite period.*—The court may award alimony for an indefinite period, if the court finds that:

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; or

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

### Prologue

▆ An alimony determination may not be disturbed unless the trial court's judgment is clearly wrong or an arbitrary use of discretion. *Brodak v. Brodak,* 294 Md. 10, 28–29, 447 A.2d 847 (1982). Although this standard of review has been in place for many years, *see generally Westphal v. Westphal,* 132 Md. 330, 334, 103 A. 846 (1918), the enactment of Maryland's present alimony statute in 1980 reaffirmed the discretion granted to trial court judges in divorce proceedings.

▆ The current law governing awards of alimony in Maryland, §§ 11–101 through 11–111 of the Family Law Arti-

---

**3.** All references herein shall be to the Family Law Article of the Md.Code, unless otherwise indicated.

cle, was originally passed as ch. 575 of the Acts of 1980. In making alimony awards pursuant to this statute, courts must ascertain the intention of the legislature and execute the purpose of the law. *See Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590 (1992). To implement this objective of statutory construction, courts first look at the plain meaning of the statutory language to determine how the legislature intended a law to be applied. *Id.* The language of § 11–106(c) and § 11–107(a) is not complicated or difficult to understand. The key elements that one seeking a change or revision in an alimony award must prove are: (1) changed "circumstances" (§ 11–107(a)(1)) and (2) a "harsh and inequitable" result (§ 11–107(a)(1)) in the case of rehabilitative alimony; and, at least as far as the record of this case is concerned,[4] (3) for purposes of the award of indefinite alimony, "unconscionably disparate" standards of living after reasonable efforts at becoming self supporting (§ 11–106(c)(2)).

The problem with this language, however, is that it is not absolute and does not, in and of itself, hint at the sequential interplay, if any, between rehabilitative and indefinite alimony in the post-divorce unwinding of the economic dependency that ofttimes arises as part of a marriage. No situation is objectively "harsh and inequitable" or "unconscionably disparate"; rather, these are terms of relativity and questions of degree. When a statute is susceptible to more than one interpretation, courts must look at other sources of construction, such as statutory scheme and legislative history, to serve as guides to carry out the "purpose, aim, or policy of the enacting body." *Baltimore City C.A.U.T. v. Baltimore City,* 321 Md. 184, 203, 582 A.2d 510 (1990).

The statutory scheme of the current alimony law provides trial court judges with a great deal of liberty to weigh the relevant factors and arrive at fair and appropriate results. For example, alimony is never automatically granted or

---

4. The record contains no indication that Ms. Blaine proceeded on the grounds provided in § 11–106(c)(1), or that the circuit court considered her motion on that basis.

barred unless waived; rather, provisions of the statute consistently note that the court "may award" an amount as circumstances require. *See* §§ 11–101–07. In addition, once alimony is awarded, no events (short of death or re-marriage) trigger a mechanical extension or termination—courts have been given the authority to remedy "harsh and inequitable results" or modify an award "as circumstances and justice require," respectively, given the different natures of the two forms of alimony. *See* § 11–107(a)(1), § 11–107(b), § 11–108(3). Furthermore, § 11–106(b) expressly requires a balancing of numerous factors of varying weights to reach a "fair and equitable award". In sum, a major theme throughout the statute is one of empowering a judge to arrive at an equitable result based on a particular set of facts. *See Tracey v. Tracey*, 328 Md. at 388, 614 A.2d 590 (1992) ("[T]he paramount goal of the legislature was to create a statutory mechanism leading to equitably sound alimony determinations by judges."); *McAlear v. McAlear*, 298 Md. 320, 327–31, 469 A.2d 1256 (1984) (recounting the history of alimony in Maryland as a function of equity).[5]

The 1980 Report by the Governor's Commission on Domestic Relations Laws (Report), upon which the 1980 enactment was largely based, provides the most accurate documentation of the history behind the current alimony provisions. It mirrors the statutory goal of providing trial court judges flexibility and power to achieve the most equitable solution possible. Throughout its Report, the Commission consistently expresses the considerable degree of power historically grant-

---

5. This reading of Maryland alimony law is consistent with the recent Court of Appeals interpretation of a related section of the Family Law Article, §§ 8–201 to 8–205 on marital property. The Court stated that Maryland's marital property provisions are structured on the theory of "equitable distribution," which requires judges to weigh the monetary and nonmonetary contributions of each spouse to arrive at the most fair distribution of financial assets after a divorce. *See generally Alston v. Alston*, 331 Md. 496, 629 A.2d 70 (1993). In *Alston*, the Court of Appeals noted "no hard and fast rule can be laid down, and ... each case must depend upon its own circumstances to insure that equity be accomplished." *Id.* at 507, 629 A.2d 70.

ed to lower courts in divorce proceedings and emphasizes that courts are to use this power to examine the unique facts of a case and arrive at an equitable decision. *See generally Tracey,* 328 Md. at 389, 614 A.2d 590 ("The 1980 Report supports our view respecting the equitable dimensions of the alimony statute. . . . the Commission made clear that a court, guided by the appropriate factors, should devise a just alimony award.").

The appellate courts of Maryland have previously interpreted the trial courts' latitude in dealing with alimony under the post–1980 statutory framework in a number of instances. For example, if at the time of divorce the court fails either to award alimony or reserve the right to award alimony at a later date, it is forever barred from awarding it. *Turrisi v. Sanzaro,* 308 Md. 515, 522, 520 A.2d 1080 (1987). Moreover, it is not an abuse of discretion for a trial court to refuse to award alimony at the time of divorce when that relief is not requested. *Melrod v. Melrod,* 83 Md.App. 180, 195, 574 A.2d 1 (1990). The scenarios that have been examined as to whether alimony may be awarded at the time of divorce teach the following: the award of alimony *pendente lite* is insufficient, in and of itself, to reserve the issue of indefinite alimony for consideration at the time of divorce or subsequently, *Speropulos v. Speropulos,* 97 Md.App. 613, 616–18, 631 A.2d 514 (1993); a request by a litigant for "reasonable" alimony preserves the chancellor's ability to award indefinite alimony because the term "alimony" is to be used generically, *Cousin v. Cousin,* 97 Md.App. 506, 518–20, 631 A.2d 119 (1993); a trial court may, if the predicate facts are present, award both rehabilitative and indefinite alimony, *Coviello v. Coviello,* 91 Md.App. 638, 605 A.2d 661 (1992); a court may decide to award rehabilitative alimony while exercising the power to reserve as to indefinite alimony, *Benkin v. Benkin,* 71 Md. App. 191, 524 A.2d 789 (1987); and, rehabilitative alimony may not be awarded as an interim consolation prize to a dependent spouse who, in seeking indefinite alimony, had failed to convince the chancellor that her medical condition at the time prevented her from being employed in the only field of

expertise for which she was trained, *Thomasian v. Thomasian*, 79 Md.App. 188, 192–96, 556 A.2d 675 (1989).

In post-divorce modification contexts, however, the reported case law guidance constitutes a smaller universe. We know that "the doctrine of res judicata applies in the modification of alimony ... and the court may not re-litigate matters that were or should have been considered at the time of the initial award." *Lieberman v. Lieberman*, 81 Md.App. 575, 568 A.2d 1157 (1990), citing *Lott v. Lott*, 17 Md.App. 440, 444, 302 A.2d 666 (1973). Moreover, a finding that the mental illness of the dependent former spouse, which was the ground for the rehabilitative award, had not improved and continued to prevent her from becoming employed, is an appropriate "change of circumstances" sufficient to warrant the award of indefinite alimony, on a motion to extend and increase the prior grant of rehabilitative alimony. *Brashier v. Brashier*, 80 Md.App. 93, 560 A.2d 44 (1989).

It is against this background that we consider the instant case.

## Analysis

The record before us could have been more complete. A fuller indication of all the bases underlying the 15 November 1985 Memorandum and Order in which Judge Beard addressed the alimony question initially, awarding rehabilitative alimony, is not provided. The record also does not indicate whether Ms. Blaine originally requested alimony generally or indefinite alimony specifically. In addition, although rehabilitative alimony was awarded in 1985, there is no express indication that the circuit court denied any prayer for indefinite alimony that may have been sought by Ms. Blaine at that time.

Nonetheless, the record is not so devoid of substance as to preclude us from addressing the issues raised in this appeal. In fact, the circuit court's 1985 Memorandum and Order leaves two points clear. First, the court's grant of alimony in 1985 was intended to be rehabilitative—not indefinite. Al-

though the court did not label the award by that title, the grant was a classic example of rehabilitative alimony: in a fixed amount, for a definite time, and terminating at a time when the court estimated Ms. Blaine would likely achieve greater financial independence. Second, it would appear that Judge Beard, in awarding rehabilitative alimony, considered the attainment of Ms. Blaine's Master's degree a significant factor. The degree was obviously a tool to assist her to achieve a higher paying job in a new field of work.

### A. Change in circumstances

The first question before this court is whether the failure of Ms. Blaine to achieve her expected goal of launching a new career is the type of change in circumstances contemplated by § 11–107(a)(1). In *Thomasian v. Thomasian,* 79 Md.App. 188, 556 A.2d 675 (1989), there is some collateral discussion of the type of "circumstances" that may justify an alteration of an alimony award. In *Thomasian,* the lower court, at the time of the divorce, awarded rehabilitative alimony to Ms. Thomasian, the dependent spouse, for five years, expressly leaving open the question of indefinite alimony for a later determination within the five year period. Although Ms. Thomasian had contended that her medical condition (primarily poor vision caused by a hereditary disease) rendered her unable to work in her only field of expertise and she was not otherwise trained in an employable skill, the trial judge found her medical evidence "inconclusive" as support for the award of indefinite alimony at the time. He explained his reasoning for granting five years of rehabilitative alimony as providing an opportunity to see if she could become self-supporting in that period and, if not and she could later present better medical evidence of her inability to secure employment, the court would entertain the issue of indefinite alimony at that time. On direct appeal of that judgment, we rejected such an interpretation as being the intended legal structure of § 11–107. We explained:

Although § 11–107 provides a mechanism whereby the period of rehabilitative alimony may be extended, it contem-

plates an extension based upon some changed circumstances occurring during the period when rehabilitative alimony is being paid. It does not contemplate the situation presented here wherein the court awards the rehabilitative alimony intending that the decision whether it will continue to be rehabilitative or will be changed to indefinite alimony would be finally determined during that period.

*Id.* at 195, 556 A.2d 675 (footnotes omitted). We therefore remanded the case for a more conclusive disposition on the issue of indefinite alimony.

The fundamental importance of *Thomasian* lies not in it providing an example of a situation not qualifying as a change in circumstance; indeed, neither of the parties in *Thomasian* alleged any such change existed. Rather, *Thomasian*'s primary significance lies in its demonstration of how the statutory scheme must be consistent with the general legal principles of res judicata. The doctrine of res judicata dictates that a judgment between parties is conclusive and serves as a final bar "to all matters that have been decided in the original suit" as well as those "matters *which with propriety could have been litigated* in the first suit." *Rowland v. Harrison,* 320 Md. 223, 229, 577 A.2d 51 (1990) (emphasis in original). Thus, once a judgment is entered between parties, a second judgment is only appropriate if new "matters" arise.

In § 11–107, these new "matters" are defined as circumstances arising after the original divorce decree. These changes in circumstances constitute a new set of facts on which to litigate, essentially an entirely new case. A judgment leaving one issue to be decided at a later time on the same set of facts is simply not a final judgment.[6] It is for this

---

**6.** *See generally Reese v. Huebschman,* 50 Md.App. 709, 440 A.2d 1109, *cert. denied,* 293 Md. 547 (1982):

Any issue that was litigated or could have been litigated in the divorce proceeding may not be re-litigated in a subsequent petition to modify [child] support. The basis of a petition to modify child support may only be an issue that was not and could not have been raised earlier, viz. a change in the circumstances of the parties.... Once that

reason that we hold that the silence of the 1985 circuit court judgment as to indefinite alimony did not preclude it from confronting that issue in 1992.

We discussed an example of a change in circumstances under § 11–107 in *Brashier v. Brashier*, 80 Md.App. 93, 560 A.2d 44, *cert. denied*, 317 Md. 542, 565 A.2d 670 (1989). In *Brashier*, the trial court found at the time of the divorce that Ms. Brashier suffered from a mental illness and granted her alimony for three years. At the end of this period, Ms. Brashier filed a Petition for Modification to increase and extend her payments because her depressive condition had not improved and continued to prevent her from obtaining a job.

The master analyzed the case history and determined that "the [lower] Court awarded rehabilitative alimony to the plaintiff with the hope and expectation that after the divorce Mrs. Brashier's condition would improve." *Brashier*, 80 Md.App. at 99, 560 A.2d 44. The master noted, however, that there was "little hope or reason to expect a substantial improvement for Mrs. Brashier," and concluded that "an award of indefinite alimony [is] reasonable under the circumstances." *Id.*[7] The chancellor agreed.

We affirmed the master's recommendations as adopted by the chancellor, explaining that although Ms. Brashier's psychiatric problems existed at the time of the divorce, her "continued inability to alleviate these conditions was not anticipated." *Id.* at 101, 560 A.2d 44. We noted that because the trial court's previous award "was made with the expectation that

---

[divorce] decree is enrolled the standard for modification is controlled by the doctrine of res judicata.

 *See also Lieberman v. Lieberman*, 81 Md.App. 575, 568 A.2d 1157 (1990) ("[T]he doctrine of res judicata applies in the modification of alimony and child support and 'the court may not re-litigate matters that were or should have been considered at the time of the initial award.' ") *citing Lott v. Lott*, 17 Md.App. 440, 444, 302 A.2d 666 (1973).

7. The master added that the award "will not preclude the defendant from petitioning for modification if he feels that either the plaintiff's financial situation has improved or his own financial resources have declined." *Brashier*, 80 Md.App. at 99, 560 A.2d 44.

after the divorce [her] condition would improve," her failure to meet this expectation constituted a change in circumstances. *Id.* at 99, 560 A.2d 44.

Thus, *Brashier* instructs us that the failure to achieve a set of reasonably ascertainable expectations that supported the circuit court's initial determination to award rehabilitative alimony can constitute a change of circumstances sufficient to bring a petition to modify the alimony situation. In the case at bar, the master and Judge Ryan made an assessment as to what Judge Beard expected with regard to Ms. Blaine's future employment potential. Although she achieved her interim goal of obtaining her graduate degree, Ms. Blaine did not obtain her and Judge Beard's ultimate purpose: launching a new career with a correspondingly higher salary. Because this expectation was not realized despite appellee's undisputed best efforts, a change in circumstances occurred. We cannot say this finding was clearly erroneous or an abuse of judicial discretion.

### B. Harsh and inequitable results

To grant an extension of the period for which alimony is awarded, the dependent spouse must prove that a "harsh and inequitable" result would occur without the extension. The presence of a "harsh and inequitable" result is not an objective, absolute standard; rather, it is a subjective classification, most appropriately determined by a trial court judge in whose judgment the exercise of sound discretion in such matters is reposed.

We are faced with the task of evaluating the lower court's decision that the failure to extend alimony would have been "harsh and inequitable." There is certainly an argument that Ms. Blaine's failure to secure such an extension would not have been unfair or unequitable—she is apparently not being forced to sell off her assets to live or claim bankruptcy. We imagine many other Americans are able to live with an adequate lifestyle at her current income level. Nevertheless,

it is not our prerogative to second-guess the chancellor in this fact-finding area.

After supporting her husband during medical school and residency, not advancing her career during marriage despite her apparent ability to do so [8], and apparently tailoring her 1985 alimony presentation on the assumption that her salary would increase upon receiving her graduate degree, equity may indeed indicate that she is entitled to indefinite alimony. *See generally Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985) (noting the same considerations are appropriate to support "the equities of the modification ordered by the trial judge"). Because we cannot conclusively determine that the trial court's judgment was clearly wrong or an abuse of discretion, we must defer to its factfinding. *See Brodak*, 294 Md. 10, 28–29, 447 A.2d 847 (1982).

### C. Indefinite alimony

Even if the factors of § 11–107 are met, and appellee is entitled to an extension of her alimony, the question remains as to whether the extension may encompass an indefinite term. This question has two parts. First, appellant contends that because the trial judge determined, by not awarding it, that an award of indefinite alimony was not appropriate at the time of the divorce in 1985, it may not now revisit that determination. This contention is incorrect. As we observed *supra*, there is no basis in Maryland law for requiring an alimony recipient to request indefinite alimony specifically at the initial hearing or be forever precluded from litigating it at a later time.[9] Section 11–106 of the Family Law Article addresses the duration of an alimony award. Indefinite alimony is described in one section of this provision.

---

**8.** Ms. Blaine graduated Phi Beta Kappa from college with a degree in sociology.

**9.** A party must, however, either receive alimony or reserve the issue upon the grant of the original divorce decree in order to preserve the right to modify the award at a later date. *Turrisi v. Sanzaro*, 308 Md. 515, 526–7, 520 A.2d 1080 (1987).

It, like rehabilitative alimony, is one type of monetary award considered under the generic term of alimony; it is not an independent claim. *See Cousin v. Cousin,* 97 Md. 506, 518–19, 631 A.2d 119 (1993).

 Once it is established that the option to award indefinite alimony is properly before the court, the question of whether the two parties' standards of living are unconscionably disparate must be answered. *See* § 11–106. The existence of "unconscionably disparate" standards of living is a question of fact in the domain of the fact-finder. In fact, the trial judge is given so much discretion on this issue that we have never reversed a trial court's award of indefinite spousal support in a published opinion. *See Rock v. Rock,* 86 Md.App. 598, 612, 587 A.2d 1133 (1991).

In the instant case, Ms. Blaine earned in 1991 an amount equal to 22.7% of her husband's income—$31,080 as opposed to $136,750.[10] An award of indefinite alimony in this case is consistent with an objective litmus test referenced in many Maryland cases.[11] *See e.g. Tracey v. Tracey,* 328 Md. 380, 614 A.2d 590 (1992) (grant of indefinite alimony to a wife whose earnings equaled 28% of her former husband's income); *Rock v. Rock,* 86 Md.App. 598, 587 A.2d 1133 (1991) (deferring to

---

10. There is dispute as to each party's exact earnings. The inclusion of the wife's part time salaries is also questionable. *See Tracey,* 328 Md. at 394, 614 A.2d 590 ("A court should not penalize a divorced person for her industry in working at two jobs."). Nevertheless, we choose to rely on the figures provided by the master. The difference between this amount and other arguable accountings would be too small to be of consequence.

11. We note that when Judge Beard acted in this matter in 1984, Ms. Blaine's income was equal to an amount that was approximately 16% of Dr. Blaine's income—$10,000 as compared to $62,000. Had Judge Ryan in 1991 relied on the parties' 1984 incomes, instead of their 1991 incomes, as a factor in determining whether unconscionably disparate living standards existed, the conclusion would have been no different. In fact, Judge Ryan did not increase the $800 monthly amount of alimony. He extended the duration of the alimony. Thus, on the record of this case, we are not confronted with the type of problem that we discuss *infra* regarding the continued vitality of the holding of *Cole v. Cole.*

lower court decision that dependent spouse did not have the skills and professional opportunities to earn more that 21.7% of the amount of her former spouse's earnings); *Broseus v. Broseus*, 82 Md.App. 183, 570 A.2d 874 (1990) (upholding lower court's grant of indefinite alimony to wife whose earnings were equal to 34.9% of her former husband's income); *Kennedy v. Kennedy*, 55 Md.App. 299, 462 A.2d 1208 (1983) (upholding trial court's finding that a 34% difference in incomes resulted in unconscionably disparate standards of living).

Dr. Blaine contends that Ms. Blaine should not be entitled to indefinite alimony because she is capable of being self-sufficient. The language of § 11–106, however, does not mandate consideration of the dependent spouse's ability to be financially self-reliant when the alimony award is based on the premise that the parties' standards of living are "unconscionably disparate." Rather, section 11–106 calls for indefinite alimony in two distinct situations: (1) a party cannot become self-supporting, *or* (2) the dependent spouse makes "as much progress toward becoming self-supporting as can reasonably be expected" yet nonetheless earns significantly less than the former spouse so that their standards of living are unconscionably disparate. *See* § 11–106. The statutory language simply does not require an individual who earns much less than her former spouse to be incapable of supporting herself before she can be granted indefinite alimony. *See Kennedy*, 55 Md.App. 299, 462 A.2d 1208 (1983) (holding that the lower court did abuse its discretion by granting indefinite alimony to a financially independent woman earning $1,309 per month in light of the fact that her former husband's earnings were much greater). *See also Tracey*, 328 Md. at 392, 614 A.2d 590 ("[S]elf-sufficiency per se does not bar an award of indefinite alimony if there nonetheless exists an unconscionably disparity in the parties' standards of living after divorce.")

In the instant case, appellee has clearly made as much progress toward becoming self-supporting as can reasonably be expected, yet the post-divorce standards of living of the parties remain unconscionably disparate. Under these facts,

there is no further requirement that Ms. Blaine be incapable of supporting herself.

Appellant also contends that the true motivation of appellee's request for a modification lies in the fact that his income has doubled in the ensuing five years since the 1985 award. He argues that an increase in the payor former spouse's salary is an insufficient basis for expanding an alimony award. Appellant is correct in noting that a financially dependant former spouse has no legal basis for expecting increased alimony payments to mirror the financial success of a former partner. Indeed, we have expressly held that a dependent spouse is not entitled to increased alimony simply "to have his or her standard of living keep pace with that of the other spouse after a final divorce." *Cole v. Cole*, 44 Md.App. 435, 443, 409 A.2d 734 ((1979). The passage of the Family Law Article in 1980 has not diminished this aspect of *Cole.*

Nevertheless, in the case at bar, appellee's request for indefinite alimony is not solely premised on the fact that her former husband's salary has increased since the time of the divorce. Instead, it is based on appellee's inability to establish a new career, as apparently both parties and Judge Beard expected at the time of the divorce. While it is true that an alimony increase is not automatically justifiable when the paying spouse increases his or her income, an improved financial status is, indeed, taken into account as part of a new set of circumstances once an independent basis for a "change" has been established. For example, in *Brashier, supra,* we noted that Mr. Brashier "has substantial assets and is in a considerably more secure financial position" than his wife. *Brashier,* 80 Md.App. at 99, 560 A.2d 44. Although this factor was not deemed dispositive, the independent spouse's wealth and earning capacity was certainly one of the factors to be considered in reviewing an award of alimony. *Brashier,* 80 Md.App. at 101, 560 A.2d 44. This policy is consistent with that of other states, which hold that although a former spouse may not have a continuing right to share in the good fortune of another, the supporting spouse's ability to pay an increase is relevant. *See generally, Bedell v. Bedell,* 583 So.2d 1005

(Fla.1991); *Gardner v. Edelstein,* 561 So.2d 327 (Fla.1990); *Innes v. Innes,* 117 N.J. 496, 569 A.2d 770 (1990); *Howat v. Howat,* 1 Conn.App. 400, 472 A.2d 799 (1984).

In the instant case, Ms. Blaine failed to achieve her ultimate goal: obtaining a new job in the field of health counseling with a concomitant increase in income. Because this failure constituted a change in circumstances, the circuit court was permitted to construct a more appropriate alimony award in light of the changed circumstances. Dr. Blaine's new income level—as well as Ms. Blaine's—are but factors to consider in this new analysis. *See generally* § 11–106. The lower court, therefore, did not abuse its discretion when it considered the new salaries of both parties to establish the most equitable alimony award to address the living situations of both parties.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.