885 A.2d 158

**Susan SIMONDS**

v.

**Robert SIMONDS.**

**No. 280, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Nov. 18, 2005.

594

**596**

Kevin G. Hessler, Rockville, for Appellant.

Cheryl Lynn Hepfer, Rockville, for Appellee.

Panel: MURPHY, C.J., ADKINS and SHARER, JJ.

MURPHY, Chief Judge.

Judges and lawyers are often confronted with the difficult process of determining precisely how a legal principle that is easy to state should be applied to a particular set of facts. Over fifty years ago, Dean McCormick declared that cases dealing with the admissibility of "other crimes evidence" are "as numerous as the sands of the sea." McCormick, *Evidence*, 1954, p. 307 n. 2. In Judge Weinstein's Evidence treatise, he comments that "the question of when evidence of a particular criminal act may be admitted is so perplexing that the cases sometimes seem as numerous 'as the sands of the sea' and often cannot be reconciled." 2 Weinstein's Evidence, P 404(08), p. 404–40 (1978). In *Yorke v. State*, 315 Md. 578, 556 A.2d 230 (1989), while affirming the denial of a motion for new trial, the Court of Appeals stated:

> All in all, we are constrained to conclude that the courts generally play by ear with an ad hoc approach whether the newly discovered evidence calls for a new trial, no matter what words they use to describe the standard alleged to support the decision. It seems that they actually lean on

the assertion, which has become a cliche, regarding hard-core pornography made by Justice Stewart, concurring in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964): "I know it when I see it."

*Id.* at 586–87, 556 A.2d 230. These observations are equally applicable to cases that involve the principal issue in the case at bar: whether a dependent spouse is entitled to "rehabilitative" alimony or "indefinite" alimony.[1]

The parties to this appeal from the Circuit Court for Montgomery County—Susan Simonds, appellant, and Robert Simonds, appellee—were divorced by a judgment of absolute divorce entered on March 6, 2004. That judgment included an award of "rehabilitative" alimony to appellant, who argued for an award of "indefinite" alimony. Appellant now argues to us that, in deciding the financial issues raised by the parties, the circuit court made seven erroneous rulings:

I. The trial court erred in denying Ms. Simonds' claim for indefinite alimony, by failing to make required findings about whether Ms. Simonds is capable of becoming self-supporting, the time necessary for her to become so, and whether, after making as much progress as she could reasonably be expected to make before becoming self-supporting, an unconscionable disparity would not still exist between the parties respective standards of living.

II. The court erred in denying indefinite alimony and awarding Ms. Simonds only rehabilitative alimony for three years in a decreasing amount, given the vast disparity in the parties' incomes, the duration of the marriage, the grounds for divorce, Ms. Simonds' significant hiatus from the workforce to care for the children, her continuing childcare responsibilities, the specific finding that she was not voluntarily impoverished, and the lack of any discussion in the

---

1. The cases that have dealt with this issue are collected and analyzed in Fader, J. and Gilbert, R., *Maryland Family Law*, § 5–10 (3d. ed.2000, and 2004 cum. supp.).

Court's opinion to distinguish the many other appellate cases which suggest that an award of indefinite alimony is appropriate when the payor's income is twenty-nine times that of the recipient.

III. The trial court erred in providing for an automatic downward modification of the alimony payable to Ms. Simonds at a specific date in the future, without regard to what the actual financial circumstances of the parties might be on the future date when the automatic modification is ordered to take place, and without any explanation justifying the amount to which Mr. Simonds' support obligation will be adjusted.

IV. The trial court erred in providing for an automatic *in futuro* modification of Mr. Simonds' child support payments without regard to what the actual financial circumstances of the parties might be at the time each future modification is to take place.

V. The trial court erred in not finding that payments made by Mr. Simonds to, on behalf of and for the benefit of his girlfriends constituted dissipation of marital assets warranting the court's treatment of those funds as extant for purposes of the monetary award to Ms. Simonds.

VI. The trial court erred by ordering that the parties repay from the proceeds of sale of the family home a $25,000 loan from Mr. Simonds' father to him.

VII. The trial court erred by denying, without explanation, Ms. Simonds' request for contribution to her attorney's fees, suit money and court costs, when the parties' incomes were vastly disparate, Ms. Simonds received no more than one-half of the marital property, incurred far less in attorneys's fees than Mr. Simonds even though she was the one who had to pursue the bulk of the discovery regarding marital assets, and where Mr. Simonds, during the course of the litigation, retained control of almost all of the

liquid marital assets and utilized nearly $100,000 of them to pay his own attorney's fees, while Ms. Simonds was relegated to borrowing from her family to pay her fees.

For the reasons that follow, we shall (1) vacate those portions of the judgment that (a) deny appellant's claims for permanent alimony and attorney's fees, and (b) establish the amount of appellant's monetary award; (2) remand for further proceedings not inconsistent with this opinion; and (3) direct that the portions of the judgment that are vacated be transformed into *pendente lite* orders that shall remain in force and effect until the parties are once again before the circuit court.

## Background

The circuit court's JUDGMENT OF ABSOLUTE DIVORCE included the following findings of fact and conclusions of law:

The parties are residents of Montgomery County, Maryland and have resided in the county for at least one year. [Appellant] is forty-five (45) years of age and [appellee] is forty-four (44) years of age; they were married on July 25, 1981 in San Mateo, California. [They] separated May 11, 2002 when [appellee] moved out of the family home after having an extra-marital affair with a co-worker.

[Appellant] obtained her Bachelor of Science Degrees in English and History. Throughout the marriage she remained out of the workforce for approximately fifteen (15) years to care for the children and maintain the household. Since the separation, [appellant] has worked part-time working approximately twenty (20) hours at two positions. One position is as a part-time office assistant in a medical office earning approximately $12.50 per hour. The other position is at a publishing company from home earning $20.00 per hour. Prior to having children, [appellant] worked for a publishing company in California as a promotion assistant and then as a copyright assistant. [Appellant] testified that she is capable of working greater hours but does not in order to have greater availability for the

children in the afternoons when they arrive home from school, the benefit they have had while attending school.

[Appellee] is presently Vice President of Content Management of EMC (formally Legato); his base salary in this position is $205,000 with bonus opportunity that ranges from zero to $15,000 a year.

Three children were born of the marriage; Mary Simonds was born June 12, 1986 and will be graduating from Churchill High School in June 2004, Rebecca Simonds was born June 25, 1989 and is a freshman at Churchill High School. Robert Simonds was born September 12, 1995 and is in school full-time.

\* \* \*

### Monetary Award

Pursuant to Family Law § 8–205(a), after the Court determines which property is marital, and the value of that marital property, the Court may transfer ownership of an interest in pension, retirement, profit sharing, or deferred compensation plan for one party to either or both parties, grant a monetary award, or both as an adjustment of the equities and rights of parties concerning marital property. To accomplish an equitable division of marital property in this case, the Court will grant a monetary award subject to the factors in order to determine the amount and the method of payment of a monetary award, or the terms of the transfer of the interest in the pension, retirement, profit sharing, or deferred compensation plan, or both as follows:

1. *The contribution, monetary and non-monetary, of each party to the well being of the family.*

Both parties contributed to the marriage, however, [Appellant] contributed more non-monetarily, as she stayed at home with the children. However, Defendant contributed more monetarily as he was the principal wage earner for the family. The Court finds that both parties contributed to the marriage in their respective ways.

2. *The value of all property interest in each party.*
[The opinion includes a chart which identified each party's interest in each piece of marital property. The value of the property was $1,565,439.43. The total liens were $891,808.66. The total value of the property (minus liens) was $698,630.82. Appellant's share was $308,714.68, and appellee's share was $398,916.13.]

3. *The economic circumstances of each party at the time the award is to be made.*

There is a substantial disparity between the incomes of the party, as [Appellant] is currently only employed part-time. [Appellee]'s base salary in this position is $205,000 with bonus opportunity that ranges from zero to $15,000 a year. [Appellant] currently earns $12.50 per hour as a medical receptionist and $20.00 per hour as a publishing assistant.

4. *The circumstances that contributed to the estrangement of the parties*

The court finds that there was marital discord towards the end of the marriage, but ultimately it was [Appellee]'s infidelity that led to the demise.

5. *The duration of the marriage*

The parties married on July 25, 1981. The parties have been married for over 22 years.

6. *The age of the parties*

The [Appellant] is forty-five (45) years of age and [Appellee] is forty-four (44) years of age.

7. *The physical and mental condition of each party*

Both parties are under no physical or mental impairments, and therefore are in good health.

8. *How and when specific marital property or an interest in pension deferred compensation, etc was acquired, including the effort expended by each party.*

The parties acquired [the] majority of the property during the duration of [their] marriage. The IRAs, savings, and checking accounts accrued value during the marriage. A

QDRO has been executed in reference to the [Appellee]'s Stock options from Legato, Inc.

9. *Contributions to the acquisition of real property held by tenants by entirety.*

The parties obtained approximately $25,000 from [Appellee]'s father as a loan. This is a marital debt that must be paid off equally between the parties from the proceeds of the sale of the home.

10. *Any award of alimony.*

The court has determined based on the disparity of the incomes of the parties, that the [Appellant] is entitled to Rehabilitative alimony for a period of 3 years because of her skills and marketability as well as her young age.

11. *Any other factors, as the Court determines necessary to consider in order arriving at a fair and equitable monetary award.*

The [Appellant] asserts that the [Appellee] dissipated the marital funds. The Court deems that there was no evidence presented in court to support this allegation. Further, [Appellee] asserts that [Appellant] has involuntarily impoverished herself by not working more hours. Again, the Court deems that there was no evidence presented in court to support this allegation.

The Court upon review of the factors for monetary award determines that the [Appellant] shall be awarded $43,100.73.

ORDERED, that the Judgment in the amount of $43,100.73 be entered in favor of the [Appellant] against the [Appellee]; and it is further

ORDERED, that the $25,000 loan from [Appellee]'s father be reimbursed equally between the parties.

### Alimony

The Court finds that there is substantial disparity between the parties' incomes. The [Appellant]'s past employment skills, combined with her young age, will aid in her

obtaining employment in the future. For the reasons stated above, the Court finds that [Appellant] is entitled to rehabilitative alimony for a period of 3 years, until April 5, 2007. Therefore, it is

ORDERED, the [Appellee] shall pay [Appellant] $5,500 per month for the first twenty-four (24) months beginning April 5, 2004; and it is further

ORDERED, that [Appellee] will pay the last twelve (12) months of alimony to [Appellant] in the amount of $4,500 per month to allow the [Appellant] to find suitable employment and become self-sufficient . . . .

\* \* \*

*Child Support*

The Court finds that [Appellee] has sufficient means to provide for child support for the three minor children. The Court has determined that there will be four levels of child support. Each level corresponds to the alimony awarded to [Appellant]. The first level corresponds to [Appellant]'s alimony award of $5,500[,] and until Mary graduates from high school in June 2004[,] Child support of $3,133.00 per month will be awarded in accordance with the Statutory Child Support Guidelines as calculated on the Court's worksheet attached thereto. The second level corresponds to [Appellant's] alimony award of $5,500 for the first two years of alimony and after Mary graduates. Child support of $2,502.00 per month will be awarded in accordance with the Statutory Child Support Guidelines as calculated on the Court's worksheet attached thereto. The third level corresponds to [Appellant]'s alimony award of $4,500 for the last year of alimony. Child support of $2,608.00 per month will be awarded in accordance with the Statutory Child Support Guidelines as calculated on the Court's worksheet attached thereto. The fourth level corresponds to the years following the end of alimony and Rebecca graduating from high school. Child support of $1,961.00 per month will be awarded in accordance with the Statutory Child Support Guide-

lines as calculated on the Court's worksheet attached thereto.

## *Attorney's Fees*

The Maryland Annotated Code, Family Law § 11–110(c)(1), states that prior to ordering payment of attorney's fees [generated] in the quest for alimony, "the Court shall consider, (1) the financial resources and financial needs of both parties, and (2) whether there was substantial justification for prosecuting or defending the proceeding."

The financial resources and needs of the parties, which were presented at trial through exhibits and testimony, and have been considered. It is

ORDERED, that each party will be responsible for [his/her] respective attorney's fees[.]

This appeal followed.

## Alimony

In determining whether an award of alimony is appropriate the trial court must consider "all of the [12] factors necessary for a fair and equitable award" set forth in the Md.Code Ann., Family Law Article ("FL") § 11–106(b) (2003).[2] These factors are non-exclusive, and "although the

---

2. The FL 11–106(b) factors are:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and non-monetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties;

court is not required to use a formal checklist, the court must demonstrate consideration of all necessary factors." *Roginsky v. Blake–Roginsky*, 129 Md.App. 132, 143, 740 A.2d 125 (1999). After considering the twelve factors, the trial court must then decide whether to grant rehabilitative or indefinite alimony.

> [I]t is well settled in Maryland that the 'statutory scheme generally favors fixed-term or so-called rehabilitative alimony,' rather than indefinite alimony. *Tracey v. Tracey*, 328 Md. 380, 391, 614 A.2d 590, 596 (1992) *see also Turrisi v. Sanzaro*, 308 Md. 515, 524–525, 520 A.2d 1080, 1085 (1987). Underlying Maryland's statutory preference is the conviction that "the purpose of alimony is not to provide a lifetime pension, but where practicable to ease the transition for the parties from the joint married state to their new status as single people living apart and independently." *Tracey*, 328 Md. at 391, 614 A.2d at 596 (citing the 1980 Report of the Governor's Commission on Domestic Relations Laws, at 4, hereinafter "1980 Report"). Nonetheless, rehabilitative alimony alone may not be appropriate in every case. *Id.* at 391, 614 A.2d at 594 (citing *Turrisi*, 308 Md. at 525, 520 A.2d at 1085).

*Solomon v. Solomon*, 383 Md. 176, 194–95, 857 A.2d 1109 (2004).[3] Two years earlier, this Court stated:

(11) the financial needs and the financial resources of each party, including:
(i) all income and assets, including property that does not produce income;
(ii) any award made under section 8–205[monetary award] and section 8–208 [use and possession] of the Family Law Article;
(iii) the nature and amount of the financial obligations of each party; and
(iv) the right of each party to receive retirement benefits; and
(12) whether the award would cause a spouse who is a resident of related institution as defined in [section] 19–301 of the Health General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.

**3.** We recognize that, when the case at bar was decided by the circuit court, that court did not have the benefit of *Solomon v. Solomon*, 383 Md. 176, 857 A.2d 1109 (2004). The appellate court, however, is

The essential purpose of alimony was changed with the adoption of the Maryland Alimony Act in 1980 ("Act"). Where the principal function of alimony once had been maintenance of the recipient, dependent spouse's standard of living, upon passage of the Act, that function became rehabilitation of the economically dependant spouse.

\* \* \*

The exceptions [to the general rule that alimony be temporary and rehabilitative] are addressed in Md.Code (1999 Repl.Vol., 2000 Supp.), section 11–106(c) of the Family Law Article ("FL").... Under the second exception, the court may award indefinite alimony upon a finding that

> even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.

FL § 11–106(c)(2).

*Karmand v. Karmand,* 145 Md.App. 317, 327–29, 802 A.2d 1106 (2002).

In *Karmand,* while affirming the circuit court's denial of indefinite alimony, we emphasized that "[a] mere *difference* in earnings of spouses, even if it is substantial, and even if earnings are the primary means of assessing the parties' post-divorce living standards, does not automatically establish an 'unconscionable disparity' in standards of living. To constitute a 'disparity,' the standards of living must be fundamentally and entirely dissimilar." *Id.* at 336, 802 A.2d 1106.

■ Last year, while vacating an award of indefinite alimony and remanding for further proceedings on that issue,[4] this Court stated:

---

required to apply the law as it exists on the date that the opinion is filed. *Snowden v. State,* 156 Md.App. 139, 152 n. 18, 846 A.2d 36 (2004), *aff'd, State v. Snowden,* 385 Md. 64, 867 A.2d 314 (2005).

4. "Although in reviewing an award of alimony we 'defer[ ] to the findings and judgments of the trial court', we may disturb an award of

The spouse seeking indefinite alimony bears the burden of proof as to the existence of the prerequisites to entitlement to such an award. *Thomasian v. Thomasian,* 79 Md.App. 188, 195, 556 A.2d 675 (1989).

In order to exercise its discretion to award indefinite alimony on the ground of "unconscionable disparity," under FL section 11–106(c)(2), the equity court must find that, even though the party seeking indefinite alimony can make substantial progress toward becoming self-supporting, at the time that maximum progress reasonably is expected, the standards of living of the parties will be unconscionably disparate. *Blaine, supra,* 336 Md. at 64, 646 A.2d 413; *Roginsky v. Blake–Roginsky,* 129 Md.App. 132, 141–42, 740 A.2d 125 (1999). Thus, deciding a request for indefinite alimony under FL section 11–106(c)(2) entails projecting forward in time to the point when the requesting spouse will have made maximum financial progress, and comparing the relative standards of living of the parties at that future time. *Roginsky, supra,* 129 Md.App. at 146, 740 A.2d 125. *See Blaine, supra,* 336 Md. at 64, 646 A.2d 413 (commenting that, because the language of section 11–106(c)(2) is prospective, it "in effect requir[es] ... the court [to] make a prediction as to the success of the dependent spouse's efforts to become self-sufficient").

*Francz v. Francz,* 157 Md.App. 676, 692, 853 A.2d 839 (2004).

 "In cases where ... the dependent spouse will be self-supporting but still a gross inequity will exist, a court may award alimony for an indefinite period." See *Brewer v. Brewer,* 156 Md.App. 77, 100–101, 846 A.2d 1 (2004); quoting *Roginsky,* 129 Md.App. at 141, 740 A.2d 125. Whether unconscionable disparity does or does not exist presents a question of fact, and the circuit court's finding of fact is reviewed under the clearly erroneous standard. *Solomon,* 383 Md. at 196, 857

alimony if we conclude that in making the award 'the trial court abused its discretion or rendered a judgment that is clearly wrong.' " *Brewer v. Brewer,* 156 Md.App. 77, 98, 846 A.2d 1 (2004) (citing *Innerbichler v. Innerbichler,* 132 Md.App. 207, 246, 752 A.2d 291 (2000)).

A.2d 1109. The amount of alimony awarded is reviewed under the abuse of discretion standard. *Id.*

In the case at bar, the circuit court found that there is—at the present time—a "substantial disparity" between the parties' incomes. A finding to the contrary would have been clearly erroneous. Based upon that finding, the circuit court proceeded to award rehabilitative alimony for three years, explaining that "appellant's past employment skills, combined with her young age, will aid in her obtaining employment in the future." The circuit court, however, did not address the issue of whether a "gross inequity" will continue to exist once appellant is employed in a position that maximizes her earning potential.[5] It is true that "the factors underlying alimony, a monetary award, and counsel fees are so interrelated that, when a trial court considers a claim for any one of them, it must weigh the award of any other." *Turner v. Turner,* 147 Md.App. 350, 400, 809 A.2d 18 (2002). It is also true, however, that the circuit court must make specific findings regarding the incomes of the parties and the ability of the alimony recipient to become self supporting. *Brewer v. Brewer,* 156 Md.App. 77, 100, 846 A.2d 1 (2004).

In *Solomon,* while analyzing an indefinite alimony award that Mr. Solomon claimed was sufficient,[6] the Court of Appeals stated:

> There are very few reported Maryland cases in which a challenge to the adequacy of the amount of an indefinite alimony award was mounted. Usually the attack has been on the threshold determination of whether an unconsciona-

---

**5.** The circuit court's MEMORANDUM OPINION does not discuss (1) the standard of living that the parties established during their marriage, (2) the financial needs of each party, and (3) the financial resources of each party.

**6.** Mrs. Solomon had been awarded both rehabilitative alimony and indefinite alimony. Mr. Solomon did not argue that Mrs. Solomon should only have been awarded rehabilitative alimony, but rather that the Court of Special Appeals "erred in vacating the ... indefinite alimony award on the ground that the amount was insufficient." 383 Md. at 196–97, 857 A.2d 1109.

ble disparity existed at all. There are several cases in which Maryland appellate courts found unconscionable disparity based on the relative percentage the defendant spouse's income was of the other spouse's income. See *Tracey,* 328 Md. at 393, 614 A.2d at 597 (28 percent); *Caldwell v. Caldwell,* 103 Md.App. 452, 464, 653 A.2d 994, 999 (1995)(43 percent); *Blaine v. Blaine,* 97 Md.App. 689, 708, 632 A.2d 191, 201 (1993) aff'd on other grounds, 336 Md. 49, 646 A.2d 413 (1994)(23 percent); *Rock v. Rock,* 86 Md.App. 598, 613, 587 A.2d 1133, 1140 (1991)(20–30 percent); *Broseus v. Broseus,* 82 Md.App. 183, 186, 570 A.2d 874, 880 (1990)(46 percent); *Bricker v. Bricker* 78 Md.App. 570, 577, 554 A.2d 444, 447 (1989)(35 percent); *Benkin v. Benkin,* 71 Md.App. 191, 199, 524 A.2d 789, 793 (1987)(16 percent); *Zorich v. Zorich,* 63 Md.App. 710, 717, 493 A.2d 1096, 1099 (1985)(20 percent); *Kennedy v. Kennedy,* 55 Md.App. 299, 307, 462 A.2d 1208, 1214 (1983)(33 percent). Although we do not adopt a standard that unconscionable disparity exists based on a particular percentage comparison of gross or net income, the relative percentages in these cases offer some guidance in assessing whether the amount of the indefinite alimony award alleviated adequately the unconscionably disparate situation found to exist in the present case.

383 Md. at 198, 857 A.2d 1109.

In *Solomon,* the circuit court found that (1) if Mrs. Solomon worked to her employment potential, she could earn $25,000 per year, and (2) Mr. Solomon earned $1,050,000 per year. Based upon these findings, the circuit court concluded that, "even after the party seeking alimony will have made as much progress toward becoming self-supporting as can be reasonably expected, the respective standards of living of the parties will be unconscionably disparate." Mrs. Solomon had been awarded $60,000 per year in indefinite alimony. The Court of Appeals held that, "although the Circuit Court was correct in recognizing an unconscionable disparity between the parties, the indefinite alimony award it provided did not alleviate that disparity adequately." *Id.* at 201, 857 A.2d 1109.

The "unconscionable disparity" cases cited with approval in *Solomon* involved awards of permanent alimony that ranged from a dependent spouse making 16 percent of the other spouse's income to a dependent spouse making 43 percent of the other spouse's income. The *Solomon* Court made a numerical comparison of the Solomons' yearly incomes, an approach taken by this Court in *Turner v. Turner*, 147 Md.App. 350, 809 A.2d 18 (2002), when we (1) calculated the income of Mrs. Turner, including alimony and imputed earnings, and (2) calculated Mr. Turner's income, less alimony payments, to determine that Mrs. Turner's income was 35 percent of Mr. Turner's income. The *Solomon* Court found "the analytical approach employed in *Turner* to be persuasive in the present case." *Solomon*, 383 Md. at 199, 857 A.2d 1109. In *Solomon*, a court-ordered employment assessment was used to predict that Mrs. Solomon's potential earning capacity would be close to 8.5 percent of Mr. Solomon's income.[7] *Id.* at 199–200, 857 A.2d 1109.

### The Conflicting Factual Findings that Require a Remand

In the case at bar, appellant's current income is approximately $12,000 per year. Taking the evidence in a light most favorable to appellee, appellant has a potential earning capacity of $45,000 per year. As stated above, the circuit court's opinion includes its finding that appellee's "base salary . . . is $205,000 with [a] bonus opportunity that ranges from zero to $15,000 a year." Although that factual finding is consistent with appellee's testimony, it is in conflict with the findings that were "calculated" by the circuit court on the Child Support Obligation Worksheet that the circuit court "attached" to its opinion.[8] On the Worksheet, the circuit court found that (1) appellee's "Monthly Actual Income–Before Tax-

---

7. That calculation took into account the amount of alimony that Mr. Solomon had been ordered to pay.

8. The Child Support Obligation Worksheet is more consistent with appellee's 2002 income tax return, which states that he earned $363,522 in that year.

es" is $29,000, and (2) appellee's "Monthly Adjusted Actual Income" (adjusted for health insurance premiums and alimony) is $23,292. Thus, appellee's child support obligation was established on the basis of a finding that his annual adjusted actual income is $279,504. We are unable to reconcile these conflicting factual findings, and must therefore remand for further proceedings at which the circuit court will (1) resolve the conflict in its factual findings on the issue of appellee's present income, which cannot be one amount for purposes of alimony and a different amount for purposes of child support, and (2) make the additional determinations that are necessary to resolve the alimony, dissipation, and attorney's fees issues that must be revisited in conformity with this opinion.

### Required Considerations upon Remand

Appellant argues that we should (1) conclude as a matter of law that the circuit court abused its discretion in denying appellant's claim for indefinite alimony, (2) reverse the decision to deny that claim, and (3) remand for further proceedings at the conclusion of which the circuit court must award indefinite alimony in an amount that will alleviate "adequately the unconscionably disparate situation found to exist in the present case." *Solomon,* 383 Md. at 198, 857 A.2d 1109. This argument, however, is based upon the calculation of appellee's income that appears on the Child Support Obligation Worksheet. In the case at bar, the circuit court (1) made inconsistent findings of fact on the question of appellee's *present* income, and (2) made no findings of fact on the question of appellee's *future* income. Under these circumstances, it was "error to deny [appellant's] request [for indefinite alimony] without explicitly discussing the disparity issue." *Kelly v. Kelly,* 153 Md.App. 260, 279, 836 A.2d 695 (2003). We are therefore persuaded that the circuit court must once again address the "rehabilitative"/"permanent" alimony issue by applying the following principles.

While it is useful to make a "percentage comparison" with other cases, it cannot be overemphasized that "[w]hether the post-divorce standards of living of former spouses are

unconscionably disparate only can be determined by a fact-intensive case-by-case analysis." *Karmand*, 145 Md.App. at 338, 802 A.2d 1106. As the above quoted cases make clear, to determine whether there is an *unconscionable* disparity between the parties' post-divorce standards of living, the circuit court cannot merely "do the math." For example, when dissolving a 22–month marriage that (1) produced no children, (2) was entered into at a time when the 45–year old wife was earning $45,000 per year, and the 44–year old husband was earning $348,000 per year, and (3) was terminated solely as a result of the wife's adultery, denial of the wife's claim for indefinite alimony on the ground of *unconscionable* disparity would not constitute error. In the case at bar, however, the parties were married on July 25, 1981, when they were in their early twenties, and the circuit court found that it was appellee's "infidelity that led to the demise [of the marriage]." Under these circumstances, in addition to determining each party's present and potential earning capacity, the circuit court must determine whether and/or the extent to which appellant "contributed to [appellee's] success in building his professional career." *Solomon*, 383 Md. at 201, 857 A.2d 1109. The *Solomon* Court emphasized that, "[a]lthough Mrs. Solomon did not play as direct a role in promoting the financial aspects of her marriage as [the dependent spouse did in *Turner, supra.*], her work in the home no doubt contributed to Mr. Solomon's success in building his professional career." *Id.* at 201, 857 A.2d 1109.

 While this evaluation begins with a determination of each party's actual income and/or earning potential as of (1) the day that they were married, and (2) the date of their divorce, the contributions made by the dependent spouse cannot be measured by a "one size fits all" mathematical formula. "Each divorce situation is different, and must be evaluated individually." *Alston v. Alston*, 331 Md. 496, 509, 629 A.2d 70 (1993).

Upon remand, the circuit court must (1) determine each party's actual income and/or earning potential as of (a) the day

·that they were married, and (b) the date of their divorce, (2) determine whether and/or the extent to which appellant contributed to appellee's professional success during their 22 years of marriage, and (3) include that "contribution" evaluation in its FL 11–106 analysis. Until the circuit court has the opportunity to resolve the conflicting factual findings on the question of appellee's income, and resolve appellant's claim for indefinite alimony in conformity with this opinion, the rehabilitative alimony award that we vacate as a "final" judgment shall be given the force and effect of a *pendente lite* award.

## Child Support

■ Although we vacate the child support award because the circuit court must revisit that issue, we direct that the award remain in place as a *pendente lite* order until the circuit court completes the further proceedings required by this opinion. For the guidance of the parties and the circuit court, however, we shall address the issue of whether the circuit court can enter a child support order that contains a provision for *in futuro* modifications.

In *Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849 (1986), the Court of Appeals disapproved of an order that provided for an *in futuro* modification of child support based on the future sale of the marital home. In that case, however, the circuit court did not explain how it was able to predict the financial circumstances of each party at the time when the reductions would take effect. In *Smith v. Freeman*, 149 Md.App. 1, 814 A.2d 65 (2002), while holding that the circuit court erred in ordering an *in futuro* modification of child support, this Court stated: "We do not believe that it is appropriate for a court to make child support determinations on the basis of events that have not occurred yet. Life after all is full of uncertainty." *Id.* at 35, 814 A.2d 65.

*Unkle* and *Freeman* are distinguishable from the case at bar. In *Unkle* and *Freeman*, the *in futuro* reductions were based on uncertain events. That a child will reach the age of emancipation and/or will graduate from high school is suffi-

ciently probable to constitute the basis of a future reduction in child support.

## Dissipation

Appellant alleges that appellee dissipated marital funds by spending money on airfare, jewelry, and other recreational activities.[9] Although appellee concedes that he spent discretionary funds on behalf of non-family members, the circuit court stated that appellant had presented "no evidence" of dissipation. In *Jeffcoat v. Jeffcoat,* 102 Md.App. 301, 649 A.2d 1137 (1994), this Court stated:

The burden of persuasion and the initial burden of production in showing dissipation is on the party making the allegation. *Choate v. Choate,* 97 Md.App. 347, 366, 629 A.2d 1304 (1993). That party retains throughout the burden of persuading the court that funds have been dissipated, but after that party establishes a prima facie case that monies have been dissipated, i.e. expended for the principal purpose of reducing the funds available for equitable distribution,

---

9. In determining a marital award, the trial court first must determine the amount and value of marital property. Generally, "property disposed of before trial cannot be marital property." *Turner,* 147 Md.App. at 409, 809 A.2d at 52. An exception to the general rule has been recognized when a court "finds that property was intentionally dissipated in order to avoid inclusion of the property towards consideration of a monetary award. . . ." *Sharp v. Sharp,* 58 Md.App. 386, 399, 473 A.2d 499, 505 (1984). Even so, "a conveyance made by a husband before and in anticipation of his wife's suit for alimony, or pending such suit, or after decree has been entered therein in the wife's favor, to prevent her from obtaining alimony, is fraudulent and may be set aside, unless the grantee took in good faith, without notice, and for value." *Oles Envelope Corp. v. Oles,* 193 Md. 79, 89, 65 A.2d 899, 903 (1949)(holding spouse's sale of marital property stock for $42,000 over book value adequate consideration to defeat fraudulent dissipation claim). To include property that was disposed of during the marriage, the trial court must be persuaded that there is evidence of dissipation, and "[t]he party alleging dissipation has the initial burden of production and burden of persuasion." *McCleary [v. McCleary],* 150 Md.App. [448,] at 463, 822 A.2d [460,] at 469 [ (2002) ]. If the evidence presented in support of a finding of dissipation is insufficient, the trial court reasonably may conclude that the previously relinquished asset should not be included in the marital property. *Solomon,* 383 Md. at 202, 857 A.2d 1109.

the burden shifts to the party who spent the money to produce evidence sufficient to show that the expenditures were appropriate.

It appears that appellant has established a prima facie showing of dissipation. The burden is now upon appellee to produce evidence of the bona fides of his expenditures.

*Id.* at 311–12, 649 A.2d 1137. That statement is applicable to the case at bar. While appellant was required to persuade the circuit court by a preponderance of the evidence that appellee "expended [the money at issue] for the principal purpose of reducing the funds available for equitable distribution," *id.* at 311, 649 A.2d 1137, and while the circuit court might not have been persuaded that appellee did so,[10] the circuit court could not reject appellant's "dissipation" claim on the basis that she had produced "no evidence."

### Proceeds from the Sale of the Family Home

 The circuit court ordered that appellant and the children would have use and possession of the family home for a period of three years. When the home is sold, the parties must pay $25,000 to appellee's father from the proceeds of the sale. Appellant argues that the circuit court erred by finding that the loan was made to the parties jointly. We are not persuaded, however, that the circuit court was either clearly

---

10. In *Bricker v. Warch*, 152 Md.App. 119, 831 A.2d 453 (2003), while rejecting the contention that the circuit court erred in finding that the appellant had failed to prove a "causal relationship" between an accident and damages allegedly arising therefrom, this Court stated:

> Although it is not uncommon for a fact-finding judge to be clearly erroneous when he is affirmatively **PERSUADED** of something, it is, as in this case, almost impossible for a judge to be clearly erroneous when he is simply **NOT PERSUADED** of something.

*Id.* at 137, 831 A.2d 453. This proposition, which is also discussed in *Starke v. Starke*, 134 Md.App. 663 at 680–81, 761 A.2d 355 (2000) and *Pollard's Towing v. Berman's Body Frame*, 137 Md.App. 277 at 289–90, 768 A.2d 131 (2001), is not applicable to the case at bar, because the circuit court erred in concluding that the "dissipation" evidence was insufficient as a matter of law to generate the issue of whether appellee had spent marital funds "with the intention of reducing the amount of money available to the court for equitable distribution." *Jeffcoat, supra* 102 Md.App. at 312, 649 A.2d 1137.

erroneous in finding that the loan constituted "marital" debt, or abused its discretion in ordering that the loan be repaid from the proceeds of the sale.[11]

## Attorney's Fees

Appellant argues that she is entitled to attorney's fees, suit money, and court costs. The Family Law Article permits, but does not require, an award of counsel fees, etc. to a dependent spouse.[12] The circuit court has discretion to grant or to deny a request for attorney's fees. *Petrini v. Petrini,* 336 Md. 453, 468, 648 A.2d 1016 (1994). That discretion must be exercised in conformity with FL § 12–103. While it is true that the denial of a dependent spouse's request for counsel fees in a divorce action should not be reversed by the appellate court unless the ruling was "arbitrary" and/or "clearly" incorrect,[13] it is also true that the appellate court cannot affirm such a ruling when the circuit court has made conflicting findings of fact on the issue of the other spouse's income. We therefore vacate the denial of appellant's request

---

**11.** Appellant argues only that the circuit court erred in finding that the loan was made to the parties jointly. Even if appellant argued that the circuit court was without authority to order that the loan be repaid from the proceeds of the sale, we see no reason why the circuit court would not have been entitled to enter the order at issue by applying the equitable principle that the chancellor can require the parties to do "that which should have been done."

**12.** FL § 8–214 states:
 (c) Before ordering payment, the court shall consider:
 (1) financial resources and financial needs of both parties; and
 (2) whether there was substantial justification for prosecuting and defending the proceeding.
 FL § 12–103 states:
 (b) before a court may award costs and counsel fees under this section, the court shall consider:
 (1) financial status of each party;
 (2) needs of each party; and
 (3) whether there was substantial justification for bringing, maintaining or defending the proceeding.

**13.** *Lopez v. Lopez,* 206 Md. 509, 520–521, 112 A.2d 466 (1955); *Gravenstine v. Gravenstine,* 58 Md.App. 158, 182, 472 A.2d 1001 (1984).

for counsel fees and remand for further proceedings on this issue.

**JUDGMENT AFFIRMED IN PART, AND VACATED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; ALIMONY AND CHILD SUPPORT PROVISIONS TO REMAIN IN FORCE AND EFFECT AS *PENDENTE LITE* ORDERS PENDING FURTHER ORDERS OF THE CIRCUIT COURT; APPELLANT TO PAY 25% OF THE COSTS; 75% OF THE COSTS TO BE PAID BY APPELLEE.**

Concurring Opinion by ADKINS, J.

I join in Chief Judge Murphy's opinion fully. I write separately only to supplement that opinion with my view of the appropriate application of FL section 11–106 by trial courts and appellate review thereof.

As Chief Judge Murphy discusses, section 11–106 establishes a multi-factored test for determining "the amount of and period for an award of alimony." *Id.* These factors are equitable considerations that the court must consider in order to arrive at a "fair and equitable award." *Id.* In 1992, the Court of Appeals emphasized the importance of an equitable result, and that the term "unconscionably disparate" is an equitable concept:

> We have previously defined the purpose of the statute as providing for an appropriate degree of spousal support in the form of alimony after the dissolution of a marriage. In regard to the appropriateness of such support, the statute itself requires that the trial court weigh all factors relevant to a "fair and equitable award." The statute elsewhere invokes the equitable concept of unconscionably disparate standards of living. Section 11–106(c)(2). Its sister provision governing the extension of an alimony period permits the court to act to avoid "a harsh and inequitable result." Section 11–107(a)(1). We conclude from these provisions that the paramount goal of the legislature was to create a

statutory mechanism leading to equitably sound alimony determinations by judges.

*Tracey v. Tracey,* 328 Md. 380, 388, 614 A.2d 590 (1992).

The statute is clear on its face that the circuit court judges must apply the considerations set forth in section 11–106(b), rather than relying solely on their own gut instincts or personal beliefs about alimony. *See* FL § 11–106(b)("In making the determination [of the amount of and the period for an award of alimony], the court shall consider all the factors for a fair and equitable award, including [the twelve enumerated factors]").

Referring to the section 11–106(b) requirement that a "trial court must evaluate and compare their respective living standards as a separate step in making its judgment," the *Tracey* Court approved *Rogers v. Rogers,* 80 Md.App. 575, 588–92, 565 A.2d 361 (1989), as an opinion that offered a "correc[t] interpret[ation of] this nuance of § 11–106(c)(2)." *Tracey,* 328 Md. at 393 n. 4, 614 A.2d 590. In *Rogers* a "denial of alimony [was] reversed with directions to consider [the] imbalance between [the] wife's highest salary of $17,500 and [the] husband's income of $115,000 plus bonuses." *Id.*

The *Rogers* Court also made it clear that a circuit court does not have a completely free rein in its factual determination of unconscionable disparity. In reversing the circuit court's denial of alimony, it said:

> On the basis of the record in this case ... we see no logical reason for denying alimony. Neither party was found to be at fault; the divorce was granted on the non-culpable grounds of two years separation. It would seem, therefore, that a gross disparity in income, which ordinarily translates into a gross disparity in standards of living, would be an unconscionable disparity.

*Id.* at 591, 565 A.2d 361.

It is often the case that when a trial court considers an alimony award, it will set forth each of the twelve factors in section 11–106(b), and fill in the facts applicable to those factors. What is often missing, though, is any explanation

about how the court evaluated those equitable factors in arriving at its decision whether there was an unconscionable disparity between the parties' lifestyles after divorce. While trial judges are not required to set forth all of their reasoning, their failure to give reasons makes appellate review difficult, if not impossible, and the latter alone can be cause for reversal. *See Kelly v. Kelly,* 153 Md.App. 260, 279, 836 A.2d 695 (2003)("[W]hen indefinite alimony is denied and [a gross] disparity [of income] exists, it is error to deny the request without explicitly discussing the disparity issue").

The Court of Appeals has determined that a decision on "unconscionable disparity" is a factual one. *See Solomon v. Solomon,* 383 Md. 176, 202, 857 A.2d 1109 (2004). Yet, in reaching this factual conclusion, the court must take into account all of the 11–106(b) factors. In other words, the equitable factors of 11–106(b) *must drive* the determination of whether a disparity in living standards after divorce is "unconscionable." [14] This means that there has to be consistency between the 11–106(b) factors and the trial court's ultimate factual determination of "unconscionable disparity." [15]

In my view, requiring such consistency results in more predictability in divorce cases, which promotes settlement and early resolution of disputes. When members of the family law bar know that trial judges are going to make (or not make) an alimony award based on the statutory factors, they are in a better position to forecast the result in an upcoming case, using those factors, and thereby knowledgeably encourage their clients to settle within that range.

In this case, the circuit court found a "substantial disparity" between the parties' incomes. It said nothing about whether that disparity is unconscionable, and did not mention section 11–106(b). In its marital property analysis under FL section

---

**14.** In this respect, a trial court's conclusion as to "unconscionable disparity" also seems to have a discretionary aspect to it.

**15.** A circuit court may consider other equitable factors not listed in 11–106(b). The trial court here, however, gave no indication that equitable factors other than those referenced in 11–106 influenced its decision.

8–205, the court found that appellant contributed non-monetarily, and appellee contributed financially to the marriage, that the marriage lasted over 22 years, that the parties are 45 and 46 respectively, and that "ultimately it was [appellee's] infidelity that led to the demise" of the marriage. But it said nothing about these factors when making its three-year alimony award except to mention appellant's "young age" and "employment skills." [16]

When considering duration of marriage in the divorce context, a 22–year marriage is long, and a spouse's non-monetary contributions over 22 years carry significant weight in equitable terms. As the American Law Institute has reported, "[e]conomic studies demonstrate that responsibility for the care of children ordinarily has a significant continuing impact on parental earning capacity." *Principles of the Law. of Family Dissolution: Analysis and Recommendations* § 5.5, p. 837 (2000). When one spouse primarily shoulders that responsibility, not only does that undertaking reduce the income-earning capacity of the child-caring spouse, but it *enhances* the income-earning capacity of the parent without that load.

Both parents are legally responsible for the care and upbringing of their children. It is common knowledge that raising children is a time-consuming and energy-consuming (as well as heart-warming) project. When the "primary career parent" is able to work with single-minded dedication 40 to 65 hours a week, without the intrusions of the day-to-day tasks and events involved in child-rearing, that parent's career simply has more chance to flourish.[17] *See Solomon,* 383 Md. at 201, 857 A.2d 1109 ("the wife's work in the home no doubt contributed to [the husband's] success in building his profes-

---

**16.** It simply said that "appellant's past employment skills, combined with her young age, will aid in her obtaining employment in the future."

**17.** There is no doubt that many families have successfully managed dual careers while successfully raising children. But it is a difficult path, and some families choose not to do so.

sional career")(also quoted by Judge Murphy); *Rock v. Rock*, 86 Md.App. 598, 614, 587 A.2d 1133 (1991).[18] The hard work and monetary contributions of the "primary career spouse" are certainly highly important. When one parent assumes the "primary career" role, and the other assumes the "primary care-giver" role, the whole family can benefit while they are intact. But when divorce occurs, the "primary career parent" does not suffer as much monetary loss as the care-giver parent. The "primary career parent" leaves the marriage with both the priceless benefit of children, and the financial benefit of an intact career. The care-giving spouse has the priceless benefit of children, and a diminished earning capacity. The inequity of this situation should be included in the circuit court's consideration on remand when deciding the question of alimony.

Finally, in identifying "the circumstances that contributed to the estrangement of the parties" as a factor in making an alimony decision under section 11–106, the legislature, I think, recognized that, notwithstanding the adoption of no-fault grounds for divorce, there are still contractual or promissory aspects of marriage. Indeed, from both legal and social perspectives, marriage is one of the most significant promises most people make in their lifetime. When one spouse primarily causes the failure of the marriage, that may be a breach of those contractual/promissory aspects, and the other spouse may be awarded alimony. The alimony can be seen as a form of damages that take into account her or his loss. This is not punishment. It is simply a recognition that there was a

---

**18.** The *Rock* Court found specific proof of loss of the wife's lost career opportunities unnecessary. Responding to the husband's "conten[tion that] there [was] no evidence that Ms. Rock relinquished any career opportunities to further Mr. Rock's career, this Court said:

> We find the suggestion in poor grace. While no finding was made on the subject and the issue was not raised at trial, when a parent leaves the work force to remain at home with children, as did Ms. Rock with Mr. Rock's son and their two daughters, that parent's career is not advancing and reentry into the work force is far from easy.

*Rock v. Rock,* 86 Md.App. 598, 614, 587 A.2d 1133 (1991).

failure of reasonable expectations, and the determination of what is fair and equitable will be governed by considerations such as the length of the marriage, each spouse's contributions to the family's well-being, and the other equitable factors of section 11–106(b).

Along with the proliferation and social acceptance of divorce in our nation, has also come the notion that marital fault is less significant than it was in times past. I do not disagree with this notion at all. But I sense from some judicial opinions that those judges view it as so insignificant (and maybe archaic), that they almost read it out of the statute. This should not be done.

To be sure, it is often extremely difficult to make these so-called "fault" determinations. Relationships are complicated, and one misdeed begets another. In many cases, we cannot expect courts to unravel the many threads leading to the relationship demise. When the determination of whose conduct led to the demise of the marriage is too tangled, complicated, and vague for a court to assess, then factor (5) of section 11–106(b) will not play a role.

In other cases, however, the fault determination is obvious, or at least reasonably discernible. When that occurs, as it did here, then it must be one of the factors considered by the judge in making an alimony decision. In my view, the legislature's decision to include the directive to do so in FL section 11–106(b) was wise because, as I suggested before, it is *still* reasonable for a person entering marriage to hold the expectation of a permanent relationship. When that reasonable expectation is disappointed, the "innocence" of one spouse is a factor that supports equitable relief in the form of alimony.

Here, the circuit court did make a determination that "ultimately it was [appellee's] infidelity that led to the demise" of the marriage. But there is no hint in its language addressing its alimony decision that the circuit court took that fault into account at all. The court, rather, seemingly rested its decision solely on appellant's "past employment skills," and her "young age." Her past employment skills have enabled

her to get two part-time jobs, one at $12.50 per hour, and another at $20.00 per hour. At age 45, she is disadvantaged in the employment market where she must compete with more experienced persons who are her age, as well as younger, more energetic, and more recently trained applicants.

When appellant's limited earning potential is combined with the long marriage, lack of fault on her part, fault on appellee's part, the growth of appellee's career success during the marriage, and his continuing high earnings in recent years, it is difficult to see how the circuit court weighed the 11–106(b) factors and failed to find unconscionably disparate standards of living. On remand, the court should articulate whether it perceives unconscionable disparity, and if not, why not.