*Lionel Best v. Sheron Fraser, et al.*, No. 1172, September Term, 2020. Opinion by Wright, Alexander, Jr.

**CHILD CUSTODY – PROCEEDINGS – EVIDENCE – PRESUMPTIONS – PRESUMPTION IN FAVOR OF PARENT**

Circuit court erred when, in custody dispute between minor child's father ("Father") and third parties (minor child's maternal aunt and uncle), the court ordered visitation between the third parties and the minor child without making a finding of "exceptional circumstances." Because the court found Father to be a fit parent, the court was required to find that there were "exceptional circumstances" before the court could engage in a "best interest" analysis and order any such visitation.

**CHILD CUSTODY – COSTS – ATTORNEY FEES**

Circuit court erred denying Father's request for attorney's fees without considering the statutory factors set forth in § 12-103(b) of the Family Law Article of the Maryland Code. Consideration of those statutory factors is mandatory when ruling on a request for attorney's fees, and failure to do so constitutes legal error.

Circuit Court for Montgomery County
Case No. 156809

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1172

September Term, 2020

_____

LIONEL BEST

v.

SHERON FRASER, ET AL.

_____

Kehoe,
Wells,
Wright, Alexander, Jr.
   (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Wright, J.

_____

Filed:  September 7, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Sheron Fraser and Orville Fraser (hereinafter "Appellees") filed, in the Circuit Court for Montgomery County, a petition for custody against Lionel Best (hereinafter "Father") regarding Father's biological son [hereinafter "Th."],[1] who was six years old at the time. Following a hearing, the court issued an order granting Appellees to have access to Th. for the purposes of facilitating visitations between Th. and his half-brother, [hereinafter "Ty."], who resided with Appellees, his aunt and uncle. In this appeal, Father presents four questions, which we have rephrased and consolidated into two questions. They are:

1. Did the trial court err in awarding Appellees access to Th. without making a finding of "exceptional circumstances?"

2. Did the trial court err in refusing to grant Father's request for attorney's fees without engaging in the requisite statutory analysis?

For reasons to follow, we hold that the trial court erred in awarding Appellees access to Th. without making a finding of "exceptional circumstances." We also hold that the court erred in refusing Father's request for attorney's fees without engaging in the requisite statutory analysis. We therefore reverse the court's judgment and remand the case so that the court can engage in the appropriate analysis and make the necessary findings.

## BACKGROUND

Th. was born to Father and Imogene Fraser (hereinafter "Mother") in 2012. Father and Mother lived together for a few years but never married. Father and Mother eventually moved into separate homes, and Th. remained in the care of Mother. Also, in the care of Mother was Th.'s half-brother, Ty., who was born in 2003 to a different father.

---

[1] For the privacy of the children, we will abbreviate their names.

In 2018, Mother died. Shortly thereafter, Mother's brother, Orville Fraser, and his wife, Sheron Fraser ("Appellees"), moved into Mother's home and provided care for Th. and Ty. A few months later, Th. moved in with Father while Ty. remained in the care of Appellees.

In October of 2018, Appellees filed a petition seeking primary physical custody of Th. Father opposed the petition and filed a counter-complaint for attorney's fees and related costs. Appellees later withdrew their request for full custody and instead asked that they be allowed access to Th. via a court-ordered visitation schedule.

During the proceedings, the trial court ordered that a custody evaluation be performed by a court-appointed evaluator. The results of that evaluation were later placed on the record in open court. The evaluator reported that Father and Th. had "a loving and supportive relationship" and that there were "no concerns about [Father] or his home." The evaluator further noted that Father had "been taking care of all of [Th.'s] needs;" that Father had "ensured that [Th.] has stability and is well rounded;" and that there were "no concerns about [Th.] remaining in the care of [Father]." Regarding Appellees, the evaluator reported that no recommendation could be made because Appellees had failed to attend the scheduled initial interview and had failed to respond to repeated requests to reschedule.

The trial court ultimately held a hearing on Appellees' petition for custody. At that hearing, Ms. Fraser testified that she moved to the United States from Guyana in April of 2018 to help care for Mother, who was sick with cancer. Ms. Fraser testified that she lived at Mother's residence and provided care for Th. and Ty. following Mother's death in May of 2018. Ms. Fraser testified that Father removed Th. from the home in August of 2018.

2

Mr. Fraser testified that he moved from Guyana to the United States in May of 2018. He testified that he and his wife had spoken with Mother and had arranged to move into Mother's home to care for Th. and Ty. Mr. Fraser testified that his expectation was that he and his wife would live at Mother's residence following her death and would take care of Th. and Ty. until they reached adulthood.

Appellees both claimed that Father had not been actively involved in Th.'s life and that, by contrast, they had a strong relationship with Th., even prior to Mother's death. Appellees argued that Th. would suffer significant harm were Father to refuse Th. access to Appellees or his brother, Ty.

Father testified that he spoke with Ms. Fraser following Mother's death and agreed to allow Th. to continue living with Appellees through the end of the school year. Father testified that he later agreed to allow Th. to stay with Appellees through the summer, mainly because Appellees had already arranged to take Th. on a family cruise and then a month-long trip to New York to visit maternal relatives. Father testified that Th. returned from New York in late August and moved in with Father a few days later.

Father claimed that, prior to their move to the United States in 2018, Appellees did not know Th. and they had no knowledge of Father's relationship with Th. Father asserted that he had always been an active part of Th.'s life. Father claimed that he was supportive of a relationship between Th. and Ty.

After the hearing concluded, the trial court issued a written order that included the following factual findings:

Th. and Ty. have both been through a serious loss in their lives. They are bonded, and it is in Th.'s best interests to continue his relationship with his brother. The qualm is that Ty. lives with [Appellees], with whom Father has personal issues. While Father is a fit parent to raise Th., it is in Th.'s best interests to be supported by his brother and the maternal side of his family. It is evident from the record that the parties cannot cooperate enough to do this without a court-ordered schedule. That being said, the Court strongly urges the parties to resolve their differences for the sake of Th., a child who all parties clearly love.

The trial court thereafter ordered that Father "shall have sole legal and physical custody of Th." and that "Th. will have visitation with his brother and by extension, the maternal family." The court included in its order a visitation schedule whereby Appellees were granted access to Th. one day per week for six weeks and, at the conclusion of the six-week period, for overnight visits every other weekend. It does not appear from the record that the court issued any factual findings or rulings related to whether "exceptional circumstances" existed to justify the court's decision to grant Appellees access to Th. It likewise does not appear that the court issued any factual findings or rulings regarding Father's counter-complaint for attorney's fees and related costs.

## DISCUSSION

### I.

Father first contends that the trial court erred in granting Appellees access to Th. in order to facilitate visitation between Th. and his brother, Ty. Father asserts that, before the court could award such access, Appellees were required to make a *prima facie* showing of "exceptional circumstances," which they failed to do. Father also asserts that, because the court found that he was a fit parent, the court was required to find that "exceptional

4

circumstances" existed before the court could award Appellees access to Th. Father contends that the court made no such finding. Lastly, Father maintains that the court should not have granted Appellees access to Th. in order to facilitate visitation between Th. and Ty. because the court "lacked jurisdiction to order sibling visitation or to grant relief to a non-party, and no deleterious effect on Th. was proven."

Appellate review of a court's decision regarding child custody involves three interrelated standards.[2] First, any factual findings made by the court are reviewed for clear error. *In re Yve S.,* 373 Md. 551, 586 (2003). Second, any legal conclusions made by the court are reviewed *de novo*. *Id.* Finally, if the court's ultimate conclusion is "founded upon sound legal principles and based upon factual findings that are not clearly erroneous, the [court's] decision should be disturbed only if there has been a clear abuse of discretion." *In re J.J.*, 231 Md. App. 304, 345 (2016) (citations and quotations omitted). "A decision will be reversed for an abuse of discretion only if it is well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Id.* (citations and quotations omitted).

"Parents have a fundamental right to direct and control the upbringing of their children." *In re Victoria C.*, 437 Md. 567, 589 (2014); *see also Shurupoff v. Vockroth*, 372 Md. 639, 650 (2003) ("The Supreme Court has long recognized the right of a parent to raise his or her children as a fundamental one protected by the due process clause of the Fourteenth Amendment."). "The ability to deny visitation by third parties to the minor

---

[2] *See Koshko v. Haining*, 398 Md. 404, 429 (2007) (noting that "visitation is a species of custody, albeit for a more limited duration").

children, absent exceptional circumstances, is an undeniable part of that right." *In re Victoria C.*, 437 Md. at 589 (internal citations omitted); *see also Koshko v. Haining*, 398 Md. 404, 430 (2007) ("Visitation, like custody, intrudes upon the fundamental right of parents to direct the care, custody, and control of their children."). "As a natural incident of possessing this fundamental liberty interest, [parents] are also entitled to the long-settled presumption that a parent's decision regarding the custody or visitation of his or her child with third parties is in the child's best interest." *Koshko*, 398 Md. at 423.

To be sure, in custody disputes "between fit natural parents who both have the fundamental constitutional rights to parent, the best interests of the child will be the ultimate, determinative factor." *McDermott v. Dougherty*, 385 Md. 320, 418 (2005) (citations and quotations omitted). "Where the dispute is between a fit parent and a private third party, however, both parties do not begin on equal footing in respect to rights to 'care, custody, and control' of the children." *Id.* at 353. "Quite simply, the non-constitutional best interests of the child standard, absent extraordinary (*i.e.*, exceptional) circumstances, does not override a parent's fundamental constitutional right to raise his or her child when the case is between a fit parent . . . and a third party who does not possess such constitutionally-protected parental rights." *Id.* at 418. "Thus, if third parties wish to disturb the judgment of a parent, those third parties must come before our courts possessed of at least *prima facie* evidence that the parents are either unfit or that there are exceptional circumstances warranting the relief sought before the best interests standard is engaged." *Koshko*, 398 Md. at 440. Moreover, "it is a weighty task (or should be) for a third party seeking custody to demonstrate 'exceptional circumstances' which overcome the

6

presumption that a parent acts in the best interest of his or her children and which overcome the constitutional right of a parent to raise his or her own children." *McDermott*, 385 Md. at 424.

Importantly, the Court of Appeals has made clear that "there must be a finding of either parental unfitness or exceptional circumstances demonstrating the current or future detriment to the child, absent visitation from [the third party], as a prerequisite to application of the best interest analysis." *Koshko*, 398 Md. at 444-45. That is, in custody disputes between a parent and a third party, "it is only upon a determination by the equity court that the parent is unfit or that there are exceptional circumstances which make custody in the parent detrimental to the best interest of the child, that the court need inquire into the best interest of the child in order to make a proper custodial disposition." *McDermott*, 385 Md. at 423 (citations omitted). The Court has set forth the following factors as being relevant in determining the existence of exceptional circumstances:

> (1) the length of time the child has been away from the biological parent, (2) the age of the child when care was assumed by the third party, (3) the possible emotional effect on the child of a change of custody, (4) the period of time which elapsed before the parent sought to reclaim the child, (5) the nature and strength of the ties between the child and the third party custodian, (6) the intensity and genuineness of the parent's desire to have the child, (7) the stability and certainty as to the child's future in the custody of the parent.

*Id.* at 419 (citations omitted).

Against that backdrop, we hold that the trial court erred. It is undisputed that Appellees and Ty. were "third parties." *See In re Victoria C.*, 437 Md. at 591 (noting that any person, including a sibling, "who is not a biological or adoptive parent is a third party"). It is also undisputed that the court found Father to be a "fit parent." As such, the court

7

needed to make a determination of "exceptional circumstances" before engaging in a "best interest" analysis and ordering visitation between Th. and Ty.

Unfortunately, the court made no such determination. In fact, the record is devoid of any indication that the court even considered the existence of exceptional circumstances before ordering visitation between Th. and Ty. and granting Appellees access to Th. Therefore, we must vacate the court's order and remand the case so that the court can consider the relevant factors and make a determination as to the existence of exceptional circumstances. Only upon such a finding may the court then determine whether a visitation and access schedule involving Appellees and Ty. would be in Th.'s best interests.

We also note that the trial court's order is ambiguous as to whom the court was granting access. If the court was granting Appellees access to Th. in order to facilitate visitation between Th. and Ty., then all that remains is for the court to make the aforementioned finding as to the existence of exceptional circumstances. If, on the other hand, the court was granting access directly to Ty., then the court must also explore whether there is a jurisdictional basis to award visitation to a non-party sibling. *See In re Victoria C.*, 437 Md. at 588, 593. Assuming that such a jurisdictional basis exists, the court can then engage in the requisite analysis as to whether exceptional circumstances exist and, if so, whether awarding visitation between Th. and Ty. would be in Th.'s best interests.[3] In so doing, the court should be mindful that it is Th.'s best interests, and not Ty.'s, that controls. *See id.* at 592-93.

---

[3] The court should also be mindful that Ty. is now 18 years of age and is therefore emancipated and can live independent of the Appellees.

## II.

Appellant next claims that the trial court erred in failing to rule on his counter-complaint for attorney's fees without considering certain statutory factors. We agree.

Section 12-103(a) of the Family Law Article ("FL") of the Md. Code (2019, Repl. Vol.), permits a court in a custody action to award to either party the party's associated costs and attorney's fees. The statute provides that, before those costs and fees can be awarded, "the court shall consider: (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding." FL § 12-103(b). Although the court has the discretion to grant or deny a request for attorney's fees, the court, in exercising that discretion, "is bound to consider and balance the considerations contained in FL § 12-103." *Frankel v. Frankel*, 165 Md. App. 553, 589 (2005). Denial of a request for attorney's fees without consideration of the statutory factors has been deemed reversible error. *E.g. McDermott*, 385 Md. at 432-33; *Simonds v. Simonds*, 165 Md. App. 591, 616-17 (2005); *Barton v. Hirshberg*, 137 Md. App. 1, 31-33 (2001).

Here, the trial court never ruled on Father's request for attorney's fees; nevertheless, the court's failure to rule can be considered a denial. *See McDermott*, 385 Md. at 432. Importantly, there is no indication that the court considered the requisite statutory factors before denying (or failing to rule on) Father's request for attorney's fees. Therefore, upon remand, the court must also decide the issue of Father's request for attorney's fees in light of FL § 12-103.

9

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**